## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK FIDLER,** | : | **Civil No. 4:24-cv-00586** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LELAND DUDEK,** | : | |
| **Acting Commissioner of Social Security[1]** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

At Step 2 of this sequential analysis, an administrative law judge (ALJ) determines whether a claimant has a medically severe impairment or combination of impairments which impact a claimant's ability to perform work-related activity. "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. Thus, the Third Circuit Court of Appeals has described this Step 2 inquiry as a "*de minimus* screening device to dispose of groundless claims" McCrea v. Comm. of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004), and "[a]ny doubt as to whether this showing has

been made is to be resolved in favor of the applicant," <u>Velazquez v. Astrue</u>, No. 07–5343, 2008 WL 4589831, *3 (E.D. Pa., Oct. 15, 2008).

Despite this *de minimis* standard, it is still axiomatic that the "[p]laintiff retains the burden of showing that an impairment is severe," by "present[ing] evidence that a limitation significantly limited his ability to do basic work activities." <u>Gunn v. Kijakazi</u>, 705 F. Supp. 3d 315, 322-23 (E.D. Pa. 2023) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987); <u>Salles v. Comm'r of Soc. Sec.</u>, 229 F. App'x 140, 145 (3d Cir. 2007); <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 551 (3d Cir. 2004)). Moreover, "absent a 'medically determinable physical or mental impairment,' an individual must be found not disabled at step two and '[n]o symptom or combination of symptoms can be the basis for a finding of disability . . . unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.'" <u>Perez v. Comm'r of Soc. Sec.</u>, 521 F. App'x 51, 55 (3d Cir. 2013) (quoting SSR 96–4p, 1996 WL 374187, at *1 (July 2, 1996)).

So it is here.

The plaintiff in this case, Mark Fidler, applied for disability benefits in May 2022, alleging an onset of his disability on November 1, 2021, due to pain in his legs. But Fidler presented no evidence at the application, reconsideration, or hearing

3

stages of his disability proceeding that his conditions were disabling or that he sought treatment for his conditions prior to August 2022, long after the disability period, which ended on December 31, 2021. Thus, having no evidence upon which to base any finding that Fidler suffered from a determinable impairment, the ALJ found at Step 2 that Fidler had not met the standard to prove he was disabled during the relevant period.

Fidler now appeals this decision, arguing that the ALJ erred in finding insufficient evidence to establish the presence of a determinable impairment at Step 2 and in failing to obtain a medical expert. However, in our view, given the paucity of any "medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.'" Perez at 55, we find this is one of the rare cases where the *de minimus* requirement at Step 2 has simply not been met. Therefore, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. For the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

The meager administrative record of the plaintiff's disability application reveals the following essential facts: On May 24, 2022, Fidler filed a Title II application for a period of disability and disability insurance benefits alleging an onset of his disability on November 1, 2021. (Tr. 17). The record reveals that Fidler stopped working in 2016 to take care of his mother, leaving his date last insured as December 31, 2021. (Tr. 30, 154). Thus, the relevant disability period encompasses only two months' time, between the beginning of November and end of December 2021. His disability application alleged he was unable to work due to an inability to read or write,[2] pain in both legs, and left arm pain. (Tr. 158). He testified that he had to stop taking care of his mother on November 1, 2021, because his legs were swollen and painful and he was "falling all over the place." (Tr. 36).  Fidler was born on December 22, 1966, and was fifty-four years old at the time of the alleged onset of his disability and fifty-five on his date last insured. (Tr. 154). He has a tenth-grade education and, prior to leaving the workforce in 2016 worked as a butcher and a bag thrower for a garbage disposal company. (Tr. 188).

---

[2] Despite listing this as a reason for his disability, in his disability report he indicated he can read and understand English and write more than his name in English. (Tr. 157).

At his hearing, Fidler was represented by an attorney who argued that his disability claim came down to one primary condition – lymphedema – which has affected both of his legs to the point where he started using a cane in August of 2022. (Tr. 30). Indeed, despite alleging that his leg pain and swelling caused him to be unable to perform work-related activities as of November 1, 2021, the medical evidence presented by the plaintiff reveals that he did not seek treatment for this pain until nearly one year after, in August of 2022. Moreover, all the evidence presented at the hearing, aside from Fidler's own statements about the onset of his disability, related to the period after the date last insured.

On this score, the longitudinal medical record in this case demonstrates that Fidler sought treatment at WellSpan Family Medicine in August 2022, reporting dull aching pain that started in his feet and radiates up to his thighs that worsened with activity and interfered with his sleep. (Tr. 223). He was diagnosed with dyslipidemia, vitamin D deficiency, and chronic bilateral low back pain with right-sided sciatica. (Tr. 221). He requested a cane or assistive device to help prevent falls and indicated he was taking Motrin for pain. (Tr. 223). The records also indicate that Fidler saw a pain management specialist and a physical/occupational therapist between December 2022 and March 2023. (Tr. 230-350). These records are equivocal as to the onset date of his dyslipidemia, with one December 2022 pain management note

stating he had been having leg pain for 14 months, (Tr. 247), but a December 2022 physical therapy note stating he had reported bilateral extremity swelling for the past five to six months with intermittent pain. (Tr. 326). Some notes also indicate he reported a "longstanding history" of chronic bilateral lower extremity pain and difficulty ambulation with "no clear reason," (Tr. 330), and one assessment reporting he stated his symptoms started as a kid when he fell off a balcony around age two to five. (Tr. 377). Thus, there is seemingly no clear medical evidence in the record as to whether, or when, the plaintiff was experiencing symptoms that would have prevented him from performing work-related activity during the relevant period. And, more importantly, it is clear from the record that he did not seek treatment for his impairments prior to August 2022.

Based upon this medical record, the State agency medical consultants who reviewed Fidler's claim at the initial and reconsideration levels concluded there was simply insufficient evidence of any determinable impairment and, as such, his claim was denied at all levels. (Tr. 49-50, 55-57). Fidler then requested a hearing, which was conducted by the ALJ on July 6, 2023. (Tr. 25-47). At the hearing Fidler was represented by counsel who highlighted the medical records in 2022 and 2023 indicating his diagnosis of lymphedema and his use of a cane starting in August 2022, but failed to provide any explanation as to why Fidler did not seek treatment

until August 2022. For his part, Fidler simply testified that he stopped taking care of his mother around November 1, 2021, because his legs hurt him and he was "falling all over the place," but also provided no insight as to why he did not seek treatment until the following year. (Tr. 36).

Following the hearing, on August 23, 2023, the ALJ issued a decision denying this claim. (Tr. 14-24). In that brief decision, the ALJ first concluded that Fidler met the insured requirements of the Act through December 31, 2021, and had not engaged in substantial gainful activity since November 1, 2021, the alleged onset date. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that, through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. The ALJ highlighted the regulations requiring medically determinable physical or mental impairments be established by medical evidence consisting of signs, symptoms, and laboratory findings, and that "under no circumstances may the existence of impairment be established on the basis of symptoms alone." (Tr. 20-21).

Nonetheless, the ALJ first considered the plaintiff's statements regarding his symptoms, summarizing:

The claimant testified and stated in the record that he became disabled on November 1, 2021 due to inability to read or write, pain in both legs, and left arm pain. He indicated that he is six feet tall and weighs 265 pounds. He stated that he was unable to work due to the combination of limitations from his severe impairments. He stated that he was unable to do much at all due to his severe pain, which impacts his ability to walk, sit, stand, lift, and carry. He asserted that his impairments interfere with sleep due to pain in his legs and noted that he usually sleeps about 2-3 hours per night. The claimant alleged that his impairments cause limitations in lifting, squatting, bending, standing, reaching, walking, sitting, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using his hands, and getting along with others. He reported in the record on July 25, 2022 that he uses a cane and noted that it was prescribed two weeks ago. He stated that medications cause sleepiness, tiredness, and cause him to be unfocused. He indicated that his back pain, which radiates into his legs and his arm pain, which keeps him from being able to lift and carry continue to worsen. The claimant testified that he was prescribed a narcotic for pain and noted that it helped. He further state that he ties to rub his own legs sometimes. He said if he goes to bed at midnight, he is up around 2:00 a.m. and cannot go back to sleep. Regarding activities of daily living, he reported that he normally gets up at 3:30 a.m. He noted that he usually sits on the recliner with his legs elevated. He stated that he prepares microwave meals and watches television and does not do too much else. He indicated that he waits for his wife to get home from work and goes to sleep at 12:00. He noted that he cares for his dog by letting the dog in and out. He stated he can perform personal care such as dressing, bathing, caring for his hair, shaving, feeding himself, and using the toilet and noted that it just takes longer to do these activities. He noted that he sits on the porch every day. He indicated that he drives a car or rides in a car when going out. He shops in stores for groceries with his wife. He noted that he does no household chores (Exs. 2E, 3E, 5E, 6E, 9E, and Testimony).

(Tr. 21).

Despite the plaintiff's statements about his conditions, the ALJ highlighted the paucity of medical evidence during the relevant period that would be required under the regulations to support the existence of a determinable impairment. As the ALJ explained:

> As noted above, the claimant's alleged onset date of disability is November 1, 2021 (Exs. 2D and 2E), and his date last insured for purposes of Title II is December 31, 2021 (Ex. 6D). However, the medical evidence of record is devoid of clinical and/or laboratory signs and findings relating back to before the date last insured of December 31, 2021. In this regard, Exhibit 1F consists of records dated August 19, 2022 from WMG Family Medicine (Ex. 1F). Exhibit 2F contains progress notes from Wellspan Interventional Pain Specialists. These progress notes are for the period December 9, 2022 to March 9, 2023 (Ex. 2F). There are also physical/occupational therapy records from Wellspan Physical Therapy for the period December 5, 2022 to March 17, 2023 (Ex. 3F). There are also progress notes from Wellspan Family Medicine for the period December 1, 2022 to April 25, 2023 (Ex. 4F). The last of the medical evidence of record consists of physical/occupational therapy records from Wellspan Physical Therapy dated May 9, 2023 (Ex. 5F).
>
> As can be seen from the above discussion, there is no medical evidence of record that relates back to the period at issue herein from November 1, 2021, the alleged onset date to December, 31, 2021, the date last insured for purposes of Title II benefits. Thus, the medical evidence of record fails to establish the existence of a medically determinable impairment during the period at issue herein.

(Tr. 21-22).

Having found that there were simply no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the

10

date last insured, the ALJ concluded that the plaintiff was not under a disability from November 1, 2021, the alleged onset date, through December 31, 2021, the date last insured, and denied his claim. (Tr. 22).

This appeal followed. (Doc. 1). On appeal, Fidler argues that the ALJ erred in finding insufficient evidence to establish the presence of a determinable impairment at Step 2 and in failing to obtain a medical expert. In our view, the ALJ's decision was well supported by the applicable social security regulations which require medical signs of a determinable impairment during the relevant period which were notably absent in this case. Thus, for the reasons set forth below, we recommend the Court affirm the decision of the Commissioner.

## III.    <u>Discussion</u>

### A.    <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,

the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must

13

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777

F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d

Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence.

Rather our task is to simply determine whether substantial evidence supported the

ALJ's findings. However, we must also ascertain whether the ALJ's decision meets

the burden of articulation demanded by the courts to enable informed judicial

review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

## B.  <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a). "[U]nder 42 U.S.C. § 423(a)(1)(A) and (c)(1), an individual is only eligible to receive disability insurance benefits if she was insured under the Act at the time of the onset of her disability." <u>Perez v. Comm'r of Soc. Sec.</u>, 521 F. App'x 51, 54 (3d Cir. 2013) (citing 20 C.F.R. §§ 404.130, 404.315(a); <u>Kane v. Heckler</u>, 776 F.2d 1130, 1131 n. 1 (3d Cir.1985)).

15

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. At step-two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Step two of this sequential analysis is often the first substantive benchmark an ALJ must address and is governed by familiar legal standards:

> With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521,

416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has
held that the step two severity inquiry is a *de minimus* screening device
to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec., 370
F.3d 357, 360 (3d Cir. 2004); Newell v. Comm. of Soc. Sec., 347 F.3d
541, 546 (3d Cir. 2003). 'Any doubt as to whether this showing has
been made is to be resolved in favor of the applicant.' Id." Velazquez
v. Astrue, No. 07–5343, 2008 WL 4589831, *3 (E.D. Pa., Oct. 15,
2008). Thus, "[t]he claimant's burden at step two is 'not an exacting
one.' McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).
This step should be 'rarely utilized' to deny benefits. Id. at 361. Rather,
... [a]n individual should be denied benefits at step two only if the
impairment he presents is a 'slight abnormality' that has 'no more than
a minimal effect on [his] ability to work.' Id." Kinney v. Comm'r of
Soc. Sec., 244 F. App'x 467, 469–70 (3d Cir. 2007). Accordingly,
"[d]ue to this limited function, the Commissioner's determination to
deny an applicant's request for benefits at step two should be reviewed
with close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d
357, 360 (3d Cir. 2004).

Dotzel v. Astrue, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22,

2014).

Under this *de minimus* standard, while closely scrutinized, decisions denying

benefits at step two are appropriate under certain circumstances. As the Third Circuit

Court of Appeals has explained:

Absent a "medically determinable physical or mental impairment," an
individual must be found not disabled at step two and "[n]o symptom
or combination of symptoms can be the basis for a finding of disability
. . . unless there are medical signs and laboratory findings
demonstrating the existence of a medically determinable physical or
mental impairment."

17

Perez, 521 F. App'x at 55 (quoting SSR 96–4p, 1996 WL 374187, at *1 (July 2, 1996)). The Third Circuit has cautioned that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003), and has remanded in cases where the absence of medical evidence of a determinable impairment was accompanied by an adequate explanation as to why the claimant did not seek treatment during the relevant period, or where and ALJ ignored conflicting medical evidence or a claimant's subjective complaints of pain in the face of contrary medical evidence. The Third Circuit has nonetheless found no error in a Step 2 denial where the claimant "has not claimed [he] was treated . . . nor . . . argued that [he] was prevented from seeking treatment during this period." See Perez at 55 (citing McCrea, 370 F.3d at 361; Newell, 347 F.3d at 547-48).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

### C.    <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Fidler did not show he had a determinable impairment during the relevant disability period. Therefore, we will affirm this decision.

At the outset, we reiterate that, while a decision denying benefits at Step 2 should be reviewed with close scrutiny, McCrea, 370 F.3d at 360, the "[p]laintiff retains the burden of showing that an impairment is severe," by "present[ing] evidence that a limitation significantly limited his ability to do basic work activities." Gunn, 705 F. Supp. 3d at 322-23. Indeed, the Third Circuit has affirmed the denial of disability benefits at Step 2 where there "there [were no] medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment," during the relevant period and the claimant "has not claimed [he] was treated . . . nor . . . argued that [he] was prevented from seeking treatment during this period." See Perez at 55 (citing McCrea, 370 F.3d at 361; Newell, 347 F.3d at 547-48); see also Hughes v. Comm'r of Soc. Sec., 297 F. App'x 123, 125–26 (3d Cir. 2008) (affirming Step 2 denial where the plaintiff failed to present any documentation regarding the examples of objective medical findings required by the regulations).

Here, the plaintiff argues that there is no requirement that medical records existed prior to the date last insured but that he is only required to demonstrate objective medical evidence of an impairment during that period, arguing that the post-August 2022 medical records which accompany the plaintiff's disability application reference his conditions as "chronic," indicating they extended prior to

20

the date last insured. But, as previously discussed, these medical records are equivocal as to the date the symptoms began and do not adequately demonstrate that the plaintiff's symptoms prior to the date last insured were severe enough to constitute more than a "slight abnormality that has no more than a minimal effect on [his] ability to work." Kinney, 244 F. App'x at 469–70. Indeed, while the plaintiff highlights the chronic nature of his conditions, arguing that the medical records demonstrate his conditions predated the date last insured, these records are vague and equivocal as to the onset date of his dyslipidemia, with one December 2022 pain management note stating he had been having leg pain for 14 months, (Tr. 247), but a December 2022 physical therapy note stating he had reported bilateral extremity swelling for the past five to six months with intermittent pain, (Tr. 326), and some notes indicating he reported a "longstanding history" of chronic bilateral lower extremity pain and difficulty ambulation with "no clear reason," (Tr. 330), and one assessment reporting he stated his symptoms started as a kid when he fell off a balcony around age two to five. (Tr. 377). Thus, while these records indicate the plaintiff experienced some form of symptoms at some point prior to seeking treatment, they are devoid of any indication as to when the symptoms became so severe that they affected his ability to work; the record shows he was performing heavy labor up until 2016 when he voluntarily left the workforce to care for his

21

mother. They also do not explanation why he delayed seeking treatment until the year following his alleged onset date.

Indeed, the only evidence of the date the plaintiff's impairments had more than a minimal effect on his ability to work are the plaintiff's own statements, upon which he heavily relies. But, "[a] physical . . . impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." Hughes, 297 F. App'x at 125–26 (quoting 20 C.F.R. § 404.1508). "Regulation 404.1528 explains that '[s]igns are anatomical, physiological, or psychological abnormalities which can be observed, apart from [a claimant's] statements (symptoms). . . . They must also be shown by observable facts that can be medically described and evaluated.'" Id. (quoting 20 C.F.R. § 404.1528(b)).

Despite vague references to the chronic nature of his impairments, the only records highlighted by the plaintiff which meet the requirements to show a medical determinable impairment refer to his functional limitations during 2022 and 2023, well after the date last insured. Moreover, at no point has the plaintiff explained why, if his symptoms extended prior to the date last insured, he did not seek treatment for his conditions prior to that date. Thus, without any objective medical evidence showing the plaintiff suffered from an impairment during the relevant period, or

explanation as to why he did not seek treatment for these conditions prior to August 2022, there was no error here.

Nor are we persuaded by the plaintiff's argument that the ALJ was required to secure a medical expert to explain this gap in the record. As the Third Circuit has explained, "Social Security regulations permit—but do not require—an ALJ to 'ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s),' and whether they equal the requirements of a listed impairment," and has acknowledged that the regulations "accord an ALJ broad discretion in determining whether to consult with a medical expert." Hardee v. Comm'r of Soc. Sec., 188 F. App'x 127, 129 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527; Social Security Ruling 96–6p (1996)). In our view, it is unclear precisely what the hypothetical report of a medical examiner, obtained nearly two years after the alleged onset date, would explain or demonstrate that the current evidence, including the plaintiff's own statements and medical records, does not show. Moreover, as the Commissioner points out, the plaintiff was counseled at the time of the disability proceedings and at no point requested a consultative examination or medical expert testimony.  Given that the "[p]laintiff retains the burden of showing that an impairment is severe," by "present[ing] evidence that a limitation significantly limited his ability to do basic work activities." Gunn, 705 F. Supp. 3d

at 322-23, the ALJ did not err in relying upon the evidence as presented by the plaintiff in determining that no determinable impairment existed during the relevant period.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Therefore, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and affirm the decision of the Commissioner.

## IV.  **Conclusion**

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: May  2, 2025